UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NORVAL JOHNSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:21-cv-00096-TWP-TAB |
| ) | |
| BRUCE A. SCHEPPER, Law Library ) | |
| Coordinator, ) | |
| ) | |
| Defendant. ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendant Bruce Schepper ("Schepper") (Dkt. 47). Plaintiff Norval Johnson ("Johnson") filed this civil rights action while he was incarcerated at Pendleton Correctional Industrial Facility ("Pendleton"). Johnson contends that Schepper--the law library coordinator--retaliated against him by limiting his library access and giving his legal papers to another prisoner to deliver after Johnson filed grievances against him. (Dkt. 25 at 2.) Johnson did not respond to this motion. Because there is no evidence to support Johnson's claims, Schepper's Motion for Summary Judgment is **granted**.

I. **STANDARD OF REVIEW**

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Federal Rule of Civil Procedure 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comty. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder

could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

## II.   FACTUAL BACKGROUND

As an initial matter, the Court notes that Johnson was released from the Indiana Department of Correction's ("IDOC") custody on October 23, 2022. (Dkt. 57.)[1]  Prior to his release, he was provided with notice regarding his right to respond and to submit evidence in opposition to Schepper's motion along with the motion, corresponding brief, and designated evidence on August 12, 2022. (*See* Dkt. 50.)  It is Johnson's obligation to monitor and to litigate this case. Since Schepper filed his Motion for Summary Judgment, Johnson has filed a motion requesting a copy of the docket sheet and two notices of change of address. (Dkts. 55, 56, and 58.)  But he has not filed a response or sought leave to file a response to Schepper's Motion for Summary Judgment. (*See* Public Docket Sheet.)

Accordingly, the facts alleged in Schepper's Motion are deemed admitted so long as support for them exists in the record.  *See* S.D. Ind. L.R. 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies

---

[1] Dkt. 57 docket text is in reference to Indiana Department of Correction website providing October 23, 2022, as Johnson's earliest possible release date.
*See* https://www.in.gov/apps/ indcorrection/ofs/ofs?lname=Johnson&fname=norval&search1.x=44&search1.y=10) (last visited March 14, 2023)

on to oppose the motion. The response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"). This does not alter the summary judgment standard, but it does "[r]educe[] the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997). With that being said, the facts are as follows:

**A.      Johnson**

Johnson was incarcerated at Pendleton during all relevant events. (Dkt. 48-1 at 5, 12, 38.) He alleges that Schepper retaliated against him for filing grievances by limiting his law library ("library") access to prevent him from pursuing litigation. (Dkt. 48-1 at 26, 37; Dkt. 25 at 2.) Johnson further alleges that Schepper retaliated against him by giving his legal papers to another prisoner to deliver. (Dkt. 1 at 4; Dkt. 25 at 2.) Johnson submitted several grievances regarding these allegations. (Dkts. 48-3, 48-4, and 48-5.) The allegations in his grievances occurred during the Covid-19 pandemic when the library was operating under a restricted access policy which limited the library's occupancy, limited each housing unit's library access to two days a week, and required all prisoners to request appointments. (Dkt. 48-1 at 37-42.)

Johnson submitted his first grievance in June 2020, alleging that the library staff limited his library access to once a week. (Dkt. 48-3 at 1.) The grievance reviewer noted that Johnson's attendance records contradicted Johnson's complaint because the records showed that Johnson had attended the library twelve times during May and June 2020. *Id.* at 2. Schepper explained that there were numerous prisoners with appointment requests ahead of Johnson in his housing unit

and the law library was operating on a limited occupancy mandate due to the Covid-19 pandemic. (Dkt. 1-1 at 4.)

Johnson submitted two grievances in August 2020 alleging that Schepper directed another prisoner to deliver his e-filed documents, that his library access continued to be restricted, and that the prison did not address his prior grievances. (Dkt. 48-4 at 1, 4.) The reviewer specified that Schepper was not present on the day that another prisoner delivered Johnson's e-file notification and that Schepper has instructed staff to follow the current practice of calling prisoners to the library to pick up their e-files in person. (Dkt. 48-4 at 2.) Additionally, the reviewer explained that the library places Johnson on the movement letter when he requests to come to the library, but he routinely misses his appointments, and that Johnson should check the daily movement letter to see if he is on it. *Id.* at 2.

In September 2020, Johnson filed another grievance because he was not on the movement letter to visit the library even though he informed his counselor that he had a September 10, 2020, filing deadline and his counselor emailed Schepper. (Dkt. 48-5 at 1.) In response, Schepper informed Johnson that he had to fill out a library request on state form 19704 and that the library's policy required him to make a formal request to gain access to the library.[2] *Id.* at 3.

Johnson is unable to identify any filing that he was unable to file. (Dkt. 48-1 at 33-34.) He did not miss any filing deadlines and was not prevented from filing motions for time, requests for sentencing reductions, and amended complaints. (Dkt. 48-1 at 30-33.) However, his inability to attend the library every day after he puts in a request caused him to rush to meet his deadlines and to have to write things out as opposed to typing. *Id.* at 37, 39.

---

[2] Mr. Schepper also cites to an October 2020 grievance, but this grievance is not supported by a citation to admissible evidence in the record. (Dkt. 49 at 3 (citing to Exhibit 6); *see also* Dkt. 48 (not listing a grievance for October 2020 or an Exhibit 6).) Therefore, this proposed material fact is not considered any further.

B.  **Schepper**

Bruce Schepper is employed by the IDOC at Pendleton. (Dkt. 53 ¶¶ 1, 2.) Schepper was the law library supervisor during all relevant events, but no longer works in the library. *Id.* ¶¶ 3-4. At the time of Johnson's allegations in 2020, Pendleton was operating under restrictions imposed in the early months of the Covid-19 pandemic. *Id.* ¶ 6. Because of the heightened safety measures during the Covid-19 pandemic, Schepper was directed to handle all prisoner housing unit's access to the library as if they were in "restrictive housing" in accordance with the Law Library Policy. *Id.* ¶ 7. Schepper handled Johnson's requests for library attendance in the same manner as all other prisoners in his housing unit. *Id.* ¶¶ 11, 30. He did not knowingly give Johnson's legal materials to another offender. *Id.* ¶ 12.

C.  **Law Library Policy**

Pendleton had a library policy in effect during the period in which Johnson's claims that a constitutional violation occurred. (*See* Pendleton's Facility Directive "Access to Law Library and Legal Materials," Policy 00-01-102, Dkt. 53 at 4-12.) Under this policy, every prisoner was required to fill out a library request form specifying "a specific reason" to gain access to the library. (Dkt. 53 at 4.) Generally, each housing unit was permitted two days per week to attend the library. *Id.* at ¶ 9. Finally, the library prioritized prisoners' library access by the order in which the requests were received and by verified deadlines. *Id.* at ¶ 10; and 4-5.

### III.  DISCUSSION

This case involves a claim under the First Amendment. In his verified Complaint, Johnson seeks monetary damages ($20,000.00) as well as injunctive relief and he alleges that Schepper retaliated against him for filing grievances by limiting his library access to hinder his litigation

5

efforts and giving his legal mail to another prisoner to deliver.[3]  (Dkt. 1 at 4; *see also* Dkt. 25 at 2.)

Schepper argues that he is entitled to summary judgment because there is no evidence to support Johnson's retaliation claim. (Dkt. 49.)  First, he asserts that Johnson's request for injunctive relief is moot because Schepper no longer works at the library. *Id.* at 5-6. Second, he proffers that there is no evidence in the record that limiting Johnson's library access adversely impacted Johnson's litigation efforts. *Id.* at 6-7.  Third, Schepper contends that he did not limit Johnson's library access because of a retaliatory motive. *Id.* at 7-9.

### A.    Personal Responsibility

In his Complaint Johnson alleged that Schepper retaliated against him by giving his legal papers to another prisoner after he filed grievances against Schepper. (Dkt. 25 at 2.)  However, Schepper testified that he never knowingly gave Johnson's legal materials to another offender at any time, (Dkt. 53 at ¶ 12), and when Johnson was deposed on July 12, 2022, he reiterated that he had apologized to Schepper for accusing him of giving his mail to another prisoner because Schepper was not working at the library on that day and therefore was not responsible for giving his mail to another prisoner. (Dkt. 48-1 at 35, 37 (Johnson confirming that Schepper did not give his mail to another prisoner and stating that "I apologized for what I apologized for because he did not do anything wrong that day.").)

---

[3] The Court reviewed Mr. Johnson's Complaint and finds that this filing is verified because it is signed under penalty of perjury. *Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) (stating that "a verified complaint is not just a pleading; it is also the equivalent of an affidavit for purposes of summary judgment, because it contains factual allegations that if included in an affidavit or deposition would be considered evidence, and not merely assertion."); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (concluding that a "verified response constitutes competent evidence to rebut the defendants' motion for summary judgment"). Thus, the Complaint operates as an affidavit for purposes of summary judgment to the extent it includes statements made on personal knowledge, sets out facts that would be admissible in evidence, and shows that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). As explained in this Order, however, Mr. Johnson's testimony does not create a material dispute of fact sufficient to overcome the motion for summary judgment.

A defendant can only be liable for the actions or omissions in which he personally participated. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Accordingly, the Court now finds that there is no evidence to support that Schepper retaliated against Johnson by giving another prisoner his legal materials. Consequently, the summary judgment record establishes that Schepper is entitled to summary judgment on this claim as matter of law. *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021) ("Rule 56 imposes an affirmative obligation on a movant that we cannot ignore merely because a nonmovant provides no responsive arguments.").

**B.    Mootness**

Next, Schepper asserts that he is entitled to summary judgment on Johnson's injunctive relief claim because Schepper no longer works at the library. (Dkt. 49 at 5-6.) "The correct standard for mootness" is that "no reasonable expectation exists that the alleged wrong will be repeated." *Lucini Italia Co. v. Grappolini*, 288 F.3d 1035, 1038 (7th Cir. 2002). A prisoner's request for injunctive relief against prison officials is moot where the prisoner is no longer incarcerated in the same facility unless the prisoner demonstrates a likelihood that he will be retransferred. *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (finding a prisoner's injunctive relief moot because he was transferred to another prison during the pendency of his case).

In this case, the Court in its due diligence reviewed the IDOC's Offender Search and takes judicial notice from the current information in the database and the docket sheet that Johnson has been released to the Indianapolis Parole District.[4] (Dkt. 57 (noting that Johnson was released on October 23, 2022).) Because Johnson is no longer incarcerated at PENDLETON, his request for

---

[4] According to the IDOC's Offender Data, Mr. Johnson has been released to the Indianapolis Parole District. *See* https://www.in.gov/apps/indcorrection/ofs/ofs?offnum=251009&search2.x=33&search2.y=14 (last visited Mar. 16, 2023).

injunctive relief is moot. Accordingly, Schepper is entitled to summary judgment on the claim for injunctive relief and this claim is dismissed for lack of jurisdiction.

### C. First Amendment Retaliation

Finally, Schepper submits that there is no evidence in the summary judgment record to support a retaliation claim because Johnson did not suffer any adverse action and any limits on Johnson's library access were not retaliatory. (Dkt. 49 at 6-9.)

"To prevail on a First Amendment retaliation claim, a plaintiff must establish three elements. First, he must show he engaged in protected First Amendment activity. Second, he must show an adverse action was taken against him. Third, he must show his protected conduct was at least a motivating factor of the adverse action." *Holleman v. Zatecky*, 951 F.3d 873, 878 (7th Cir. 2020) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

First, there is no dispute that Johnson engaged in activity protected by the First Amendment. (Dkt. 49 at 5.) "'A prisoner has a First Amendment right to make grievances about conditions of confinement.'" *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (quoting *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010)). The Court proceeds to the second and third elements.

#### 1. Adverse Action

Second, the undisputed summary record reflects that Johnson did not suffer any injury that would deter a reasonable person from filing future grievances. To satisfy the adverse action requirement, a plaintiff must present evidence that the adverse action would objectively deter future First Amendment activity. *FKFJ, Inc. v. Vill. of Worth*, 11 F. 4th 574, 585 (7th Cir. 2021) (noting that this is an objective test). When determining whether the adverse action acts as a deterrent, courts ask "whether the alleged conduct by the defendants would likely deter a person

of ordinary firmness from continuing to engage in protected activity." *Id.* (citations omitted). While the severity of retaliatory conduct is generally a question of fact, "when the asserted injury is truly minimal, [courts] can resolve the issue as a matter of law." *Id.* "The harsh realities of a prison environment affect our consideration of what actions are sufficiently adverse." *Holleman*, 951 F.3d at 880-81. Rather, "[p]risoners may be required . . . to tolerate more than average citizens, before an action taken against them is considered adverse." *Douglas*, 964 F.3d at 648.

Johnson has not presented any evidence to establish a reasonable probability that a jury could find that limiting his library access consistent with the prison policies in place during the height of the COVID-19 pandemic in 2020 would hinder future First Amendment activity. *Anderson*, 477 U.S. at 248 (noting that summary judgment is appropriate only when no reasonable jury could find for the non-moving party). Rather, the only injury identified in the summary judgment record was a mere inconvenience. (Dkt. 48-1 at 37 (Johnson stating that Schepper hindered him "from coming to the law library" and as a result he had to handwrite filings and "rush things.").) Johnson wanted access to the library the day after he put in a request. *Id.* at 38. He explained that this is how the library operated prior to the pandemic. *Id.* But Johnson's limited library access did not hinder him from filing any legal actions, nor did it cause him to miss any filing deadlines. (Dkt. 48-1 at 30-33.) Johnson's limited access to the library is not a deprivation sufficient "to deter a person of reasonable firmness from continuing to engage in protected conduct." *Holleman*, 951 F.3d at 882 (finding a transfer not sufficiently adverse).

### 2. Motivating Factor

Third, even if the Court assumes that limiting Johnson's library access was an adverse action, there is no evidence in the summary judgment record that Johnson's grievances were a motivating factor for imposing these limitations.

9

At summary judgment, the burden of proof on whether the protected activity was a motivating factor for the alleged retaliation "is split between the parties." *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012). Initially, a plaintiff "must produce evidence that his speech was at least a motivating factor . . . of the [] decision to take retaliatory action against him." *Id.* The burden then shifts to the defendant "to rebut the causal inference raised by the plaintiff's evidence." *Id.* If the defendant rebuts the causal inference by demonstrating a legitimate reason for the alleged retaliatory action, "the plaintiff must present evidence that the defendant's proffered explanation is pretextual." *Lalvani v. Cook Cnty., Ill.*, 269 F.3d 785, 790 (7th Cir. 2001).

Johnson has not submitted any evidence to establish a reasonable probability that a jury could find that Schepper limited Johnson's library access because Johnson filed grievances against him. *Anderson*, 477 U.S. at 248. While Johnson testified that these restrictions occurred after he filed grievances against Schepper, timing alone does not satisfy the motivating factor requirement. (Dkt. 1 at 4); *Manuel v. Nalley,* 966 F. 3d 678, 681 (7th Cir. 2020) (quoting *Loudermilk v. Best Pallet Co.*, 636 F.3d 312, 315 (7th Cir. 2011) ("Suspicious timing alone will rarely be sufficient to create a triable issue because '[s]uspicious timing may be just that—suspicious—and a suspicion is not enough to get past a motion for summary judgment.'")).

Rather, the evidence in the summary judgment record shows that Johnson's access was limited due to Covid-19 pandemic policies. (Dkt. 49 at 8 (Schepper stating that the pandemic required the prison to limit library access and that this is a legitimate penological reason) (citations omitted); *see also* Dkt. 1-1 at 4 (Schepper informing Johnson that the library had a backlog of appointment requests and that the Covid-19 pandemic required limiting the library's occupancy); and Dkt. 53 at 4-7 (Library policy stating that housing units could only visit the library twice a week, that prisoners were required to make written requests, and that prisoners who made requests

10

may be prioritized when the prisoner communicated that he had a verified deadline).)

Johnson also testified that during the Covid-19 pandemic, the library limited all prisoners' library access and that this included limiting prisoners' appointment requests by housing unit to twice a week and the library's occupancy to seven or eight prisoners. (Dkt. 48-1 at 39-42 (Johnson conceding that his limited access occurred during the Covid-19 pandemic and that the prison put restrictions in place due to the pandemic).) While he testified that the prison could have made exceptions for him, this does not undermine Schepper's testimony that the restrictions were imposed for a legitimate penological reason. *Id.* at 38-39 (Johnson suggesting that Schepper did not need to limit his access because not all prisoners wanted to go to the library); *Holleman*, 951 F.3d at 880-81 ("Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."); *Wright v. Funk*, 853 F. App'x 22, 25 (7th Cir. 2021) (citing *Brown v. Phillips*, 801 F.3d 849, 855 (7th Cir. 2015) (noting that "even if a plaintiff can make a prima facie showing [of retaliation], summary judgment is still appropriate if the defendant acted for a legitimate penological reason.")).

Moreover, Johnson's grievances indicate that he missed opportunities to go to the library because he failed to attend appointments and to properly request appointments. (Dkt. 48-4 at 2 (Grievance response specifying that Johnson's missed several appointments even when he was placed on movement letter); Dkt. 48-5 at 2-3 (Schepper informing Johnson that the library's policy required him to submit an appointment request in addition to informing his counselor of a verified deadline).) Thus, Schepper has presented adequate evidence that the limitations placed on Johnson's library access were related to a legitimate penological reason and the result of Johnson's failures to attend or to request appointments.

11

Finally, there is no suggestion that Schepper's explanation is pretextual. *See Lalvani*, 269 F.3d at 790 (noting that if the defendant rebuts the causal inference by demonstrating a legitimate reason for the alleged retaliatory action, "the plaintiff must present evidence that the defendant's proffered explanation is pretextual."). In the absence of any evidence that Johnson's federally secured rights were violated, summary judgment in favor of Schepper is appropriate. *Reed v. Brex, Inc.*, 8 F.4th 569, 578 (7th Cir. 2021) (citing *Beardsall v. CVS Pharm., Inc.*, 953 F.3d 969, 973 (7th Cir. 2020)). Accordingly, Schepper is entitled to summary judgment on Johnson's First Amendment claim.

## IV.   CONCLUSION

For the reasons explained above, Schepper's Motion for Summary Judgment, Dkt. [47], is **GRANTED.** The undisputed summary judgment record reflects that Johnson's First Amendment rights were not violated and that his claim for injunctive relief is moot. Judgment consistent with this Order, and the Court's Screening Order (Dkt. 25), shall now issue.

**SO ORDERED.**

Date: 3/17/2023

_____
Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Norval Johnson
Marion County Duvall Residential Center
1848 Ludlow Avenue
Indianapolis, Indiana  46201

Matthew T. Black
BLACK CLAY LLC
black@blackclayindiana.com

Adam Clay
BLACK CLAY LLC
clay@blackclayindiana.com

Peter Andrew Inman
INDIANA ATTORNEY GENERAL'S OFFICE
peter.inman@atg.in.gov

14